Good morning. May it please the court. There are two main issues in this appeal. First, did the district court commit an error in weighing the evidence offered to prove the existence of the 1988 reversion agreement? And all of the evidence either supports the existence of this reversion agreement or is not germane to this issue. So the district court must have committed an error and improperly weighed the evidence. Second, did the district court err in ruling that a written patent assignment was needed in order for the ownership of the 161 application to have passed to Tony Bono and Joaquin Martillo in January of 1993 according to federal law? There is no evidence of any promise to assign any patent application in this case. The evidence on this issue all suggests a self-executing automatic reversion based on one of two conditions precedent occurring so federal law does not apply and state law governs the determination of ownership in this outcome on the second. So I'll address that in detail first. The district court confines all of its points on the evidentiary issue to page 24 of its opinion. But first I want to point out that all the evidence of this case is consistent with one thing. Vincent Bono, the former president of Clearpoint who was a party to the reversion agreement, as the former president of Clearpoint chose to act consistently in Clearpoint's interest in this case. But the fact that Mr. Bono, Vincent Bono, chose to act in Clearpoint's interest after the fact is not determinative and is not, it does not, does not disprove the existence of the 1988 agreement that he made with his brother refused to sign the assignment, an assignment or other document documenting the transfer of ownership of the 161 application to Tony or Joe Akeem for 14 years. But he did this out of his concern that Clearpoint would be exposed to some type of liability. This is supported by all the evidence in this case. For example, the Penrill agreement of July 1993 appears to in some ways to an assignment from Clearpoint to Penrill of the 161 application. But at the time Vincent signed this Penrill agreement, Vincent knew that the intellectual property was no longer owned by Clearpoint and the sworn declarations provide other reason. Vincent Bono signed the Penrill agreement in July 1993 to appease Penrill, which was threatening to sue it at that time based on the agreement that Clearpoint and Penrill had for delivery of the Constellation devices that are the subject of that patent application. Thus, Vincent Bono clearly had a motivation to keep the true ownership of the 161 application hidden. This is well documented throughout the four sworn declarations that were briefed extensively in this case. At trial, the appellee repeatedly refers to the Penrill agreement as an assignment of the 161 application. This, despite the conflicting apparently confused Vincent's behavior in acting in Clearpoint's interest in July of 1993 with some other motive that is not explained by the district court in its opinion and is not supported by any of the evidence. But the facts here all point to Vincent Bono choosing in later 1993 and after that to act in Clearpoint's interest. This does not disprove the existence of the 1988 verbal agreement, which is supported by all the other evidence. Instead, these separate actions by Vincent Bono in refusing to sign an assignment to Tony or Joaquin or in signing the Penrill agreement, they're evidence of the existence of this 1988 reversion agreement that was set up through oral contracts and also the written assignment. Now, on the evidence issue, Judge Ellis's opinion states at page 24 that plaintiff has not established by a preponderance of the evidence the existence of any agreement that would grant a reversionary interest in the 161 application to Tony or Joaquin. The district court is clearly in error here as all the evidence plainly supports the existence of this reversion either by direct proof or indirectly. There is no evidence in the record that actually contradicts the existence of a reversion agreement for the 1993 when Clearpoint canceled the Constellation Project and terminated Tony and Joaquin from their employment. What has been offered by the district court and the aptly as supposedly disproving the existence of the reversion doesn't actually disprove what is established and supported by all the evidence. When I state all the evidence, what I mean, what I'm referring to primarily are the foreign sworn declarations, two by Vincent Bono, one by Anthony Bono, one by Joaquin Martino, the 1988 written agreement, and the 1993 Penrill agreement from July of 1993, and the October royalty letters that Penrill signed with Tony and Joaquin to pay them royalties on the Constellation technology. Why do the fall 1993 royalty letters, the letters that were sent to the parties, help you? Those seem to me to be problematical for you. Well, they actually help because these are royalty, they're basically setting out, they're recognizing that Tony Bono and Joaquin have an ownership claim of the Constellation technology. They're recognizing that they have an ownership claim and they're agreeing to pay them royalties over and above their salary based on this ownership claim. And if, actually, I've cleared this with opposing counsel, but I brought these documents from the joint appendix. I'd be happy to distribute them. Well, we have the joint appendix. The 1988 written agreement is the primary evidence on this issue as it is contemporaneous with the formation of both the written agreement and the verbal agreement in the 1980s. The written agreement does not directly prove the existence of the reversion agreement, but it suggests it. It's a very short document and it clearly supports the existence of the reversion by the 1988 verbal agreement. If you take a look at the first paragraph on page one of the 1988 written agreement, it states, this is a summary by which Clearpoint acquires rights to the technology and intellectual property from Tony and Joaquin. So it is setting out that Clearpoint will be acquiring all the rights and technology, including the intellectual property. But on page two, it outlines conditions for establishing a reversion. It goes into detail in both of those two paragraphs about what would happen if Tony and Joaquin left Clearpoint, or if Clearpoint decided to terminate the project. And it also states at the end of the second paragraph that Tony and Joaquin will later own the software in order to sell it to Clearpoint. So when you take a look at that second paragraph on page two, the second paragraph on page two, and compare and juxtapose it with the first paragraph, the first paragraph on page one is talking about the transfer of all the technology and all the intellectual property into Clearpoint, whereas in the second paragraph on page two, it's contemplating that Tony and Joaquin again own the software. So there has to be some sort of reversion taking place. But then subsequently, in 1992, there is the assignment, which seems to me to be pretty explicit to be an assignment of all intellectual property rights vis-a-vis this patent application. It is, Your Honor. It is. But the 1992 assignment is not inconsistent with the 1988 verbal agreement. As a matter of fact, it is consistent with it because Tony and Joaquin had agreed on coming to Clearpoint that they're going to be giving all their rights and technology subject to the reversion agreement. But the assignment doesn't have any language about subject to an oral agreement or anything like that. 1992 assignment does not. It's very sweeping in its terminology. It is. But the thing is, take it into context. Take it into context. The 1992 assignment only relates to the patent application, whereas the 1988 verbal agreement relates to all the intellectual property, all the technology. The patent application is pretty important to this case. It is very important to this case. I mean, that's what we're here for. Yes. So it applies only to the patent application. It's still, you're out of court if that assignment governs. I agree. Yeah, I agree. But it does not agree. It has to be taken into context with the overarching 1988 verbal agreement. Isn't that why we have a requirement in federal law as vis-a-vis patent assignments that they'd be in writing to avoid exactly the kind of problem that we have in this case? That would have simplified things quite a bit, Your Honor, but that did not happen. That is the rule. And therefore, it simplifies it to the extent if we follow the rule and apply it in this case, then this document, the 1992 document, is the end of the case. But case law does establish that ownership of a patent application can transfer by other than patent assignment. By operation of the law. But then that gets you into the argument that you make, that what you refer to as a reversionary interest, which looks to me like just a promise to assign upon future events, is in fact operation of law as opposed to just an oral agreement. And that seems to me a stretch. What's the basis for your argument that that is a Well, my argument is that it was a transfer by law, by enforcement. By virtue of the enforcement of a contract, right. But then that would make all oral contracts transfers by operation of law, would it not? Depending on the circumstances, yes, it can be construed that way. Which would totally defeat the writing requirement for assignments, would it not? No, it would not, Your Honor. The transfers of property have to be able to take place outside of written patent assignment. There are transfers of property that have to be accounted for outside of... The transfer in test to see, for example, which is the example that shows up as operational law. But that doesn't include contractual arrangements to transfer property, which look to me like exactly the core of what the writing requirement is intended to prohibit. Well, that is correct. And my clients have did what they could in this record to rectify that and satisfy the writing requirement. They did file a declaratory patent assignment in 2010 that referred to all these circumstances that we're talking about here. And that was not the confirmatory assignment, this was a declaratory assignment that basically included the documentation, including Vincent Bono's declaration and the 1988 written agreement. That was filed in 2010. Nothing was ever done by Penro with that Penro agreement from July of 1993. Okay, let's hear from the office. We save you a rebuttal time. Mr. Foreman. Thank you. May it please the court. This case hinges on the existence of this 1988 oral agreement. As opposing counsel... Mr. Foreman, why does the office care about the chain, the sequence of transfers of ownership when there is an owner, an assignee, who brings an action, a 145 action or any other kind? Does the office always say, do you really own it? Seems quite unusual to me. This is the only case, 145 case, I'm aware of the issue of ownership has arisen. We raise this issue... Why did it arise? That's my question. Well, this application is kind of a complicated history where in 1993 the assignee record was clear point and that's when the application went abandoned. Yes, it has a curious history, I agree. You're saying if the office thinks this is a curious history, then we are entitled, required to check who owned what at what stage? Well, so as I was saying, in 2007 when the application was attempted to be revived, the purported owners were Mr. Bono and Mr. Martillo, which and so the office looked at that and saw kind of the disconnect between the two and just asked for some documentation or evidencing that these two individuals actually have some claim of ownership and that's the kind of the back and forth that happened with the two orders to show cause. Is that standard procedure? I think it's standard procedure that for an assignee to be able to prosecute an application, they have to have something on record showing... But that's what's happening here. The assignee is seeking to prosecute the application. Yes. And the office says, well, maybe you never really got the assignment. We're going to penetrate that. Correct, and it wasn't explored fully during the office proceedings because that's purely an ex parte proceeding, but once Weilbert brought this case to district court and allowed us to take discovery and explore it more, we were entitled, I believe, to explore the ownership issue. That's what I'm trying to understand, why the office cares. There is no adverse party. There is no adverse claimant. It is just a long stretch of time that piques one's interest. Well, if they had come back in 2007 and said, here's the document, here's the assignment that shows that Clearpoint assigned this application to these two individuals... Why were they required to do that? Well, under our regulations, we require assignees to show some chain of title. That's 37 CFR 3.73, I believe. The assignee has to show the chain of title. All that's needed is for the signature that I've assigned it to so-and-so. Well, they didn't have that. I mean, there was no written assignment from Clearpoint to these two individuals. In fact, the only written assignment that exists is from Clearpoint to Penrill in 1993, and that 1993 agreement, I mean, I don't know how you can say it any more clearly, that Clearpoint was assigning its patent rights to Penrill. So once... So they say now, after all of this back and forth and refusals and so on, yes, we've assigned it, and it's for the office to say, no, you didn't? Well, the office doesn't make an ownership determination. The office really just wants to have, you know, something on record that will allow the office to let these individuals proceed. I mean, the office doesn't typically challenge ownership claims. So what's a record now in the office? Well, what's a record in the office is what's a record, I mean, in this case. So they submitted... The office asked them, you know, what's your evidence that you own this? And they came back with, you know, their declarations, and the PTO said, well, let's give us something more. Give us either an order from a court showing that you own this, or give us a memorandum from an attorney explaining why you own this. And so they laid out their case for why they owned it, and the office accepted that and allowed prosecution to continue. Well, that wasn't, you know, an ownership determination per se. That was just something that was in the record that, according to them, showed that they had the right to prosecute. And so once this case went to district court, you know, we examined the records again. We had a valid argument that they didn't own it on the application, so we pursued it. And I think that the evidence here, you know, I think I'm going to say the opposite of what my opposing counsel says, that all the evidence points to the fact that there was no oral agreement. I mean, you have the 1988 written agreement, which is nothing but a reversionary interest. You have the 1992 assignment, which is nothing but a reversionary interest. You have the 1993 Penroll agreement, where Clearpoint clearly assigns the application to Penroll. You have the October 1993 letters from Penroll to the two individuals, which they both signed, stating that they have no ownership interest in this application. And then you have this 14-year span where Vincent Bono refuses to put in writing a statement that these two individuals own the application, and they've never given us a really satisfactory explanation about why he refused to do that. So you put all this... I agree it's mysterious. What I'm trying to understand is why this is the business of the office to say that this went on for so long, so we're very curious as to what happened here and there. So please provide the chain of ownership from the beginning to now. Well, so the office was interested... During the prosecution proceedings, the office was interested because there was a disconnect between who owned the application in 1993, who claimed to own the application in 1993, and who claimed to own the application... Well, I agree this is a disconnect. I'm trying to understand why this is the business of the office. Like I said, there's a regulation, 37 CFR 3.73, which says that when an assignee is going to be prosecuted, there needs to be something in the record showing the assignee's right to do that. But they did that. They eventually got the document. Correct. I mean, they eventually provided documents that the office accepted and allowed prosecution to continue. Now we're in district court where the rules are different. They have to show that they have the right to be in district court. They have to show standing that the district court has jurisdiction over this claim. Well, there's no question being raised, I gather, that they are the current owners. And is it in order to establish an effective date going back to the beginning? Or why should it be different just because this happens to be a 145 action? Because, I mean, there is a question. We don't think that RealVert has any ownership interest in this application whatsoever. And so it would be no different than you or me going into district court and saying, we'd like you to review the rejection of this patent application. For which I have an assignment. Well, no. They have no... I was referring to you or me because we have absolutely no ownership interest in this application, just like RealVert does. So we don't allow anyone to just challenge a PTO determination regardless of their connection to this application. They have to show an ownership interest in this application for them to have standing for there being injury. Because if they don't have any ownership interest in this application, then they suffer no injury. I'm trying to understand why the current assignment is ineffective. There is no current assignment. They finally got an assignment, these two ex-employees. I'm not sure which assignment you're referring to, but the only written assignment that they received was a 2013... Yes, that's the one. That's the one I'm referring to. I gather that was all that they were able to get after all these years. But ClearPoint cannot assign what it doesn't have. At that point, ClearPoint had already assigned to Penrill, right? Correct. In 1993, ClearPoint assigned to Penrill. Did they intervene and say, no, this is our patent? Penrill has not been involved in this whatsoever. As far as I know, Penrill doesn't even exist anymore. The confirmatory assignment cannot be valid because ClearPoint, once ClearPoint assigned their rights to Penrill in 1993, they had no right to assign the application to anyone else. So there is absolutely no valid written assignment to Rehlberg in this case. There are no further questions. Let me ask you, you're not raising then the question of the propriety of the revival? No, the application was revived and that's not an issue in this case. Okay, thank you. Thank you. All right, Mr. Delaney. As I've covered in the brief from the history of this case, Tony and Joe came to the patent office in 1993, and they wanted to resume prosecution of the patent application at that time. They were told by the patent office properly and by counsel outside that they could not communicate with the patent office about the patent application because they did not have power of attorney. It was based on the 1992 assignment that was of record. The patent office was relying on that and saying, we cannot talk to you about this case. So where do you stand if, to state a possibility, we conclude that that oral conversation was insufficient, that if you assign an invention, an application has to be in writing? If you come to that conclusion, then I have nothing else to say. Is that it? Does that end it? That unless you can go back to 1993, your chain of ownership or whatever it is that's being established? Yes, I believe the record is very clear and the evidence is very clear that there was a reversion agreement that was executed in 1993. But if there wasn't, then you lose. Then there would be nothing. There would be nothing. And Judge Bryson was asking you about the subsidiary question about an assignment by force of law. We would need to decide whether this agreement qualifies under that rubric, right? Correct. You're relying on the Massachusetts state law. Yes. Yes. Yes, Your Honor. And I want to point out that the declarations in this case, they're highly, highly detailed. They're sworn to under Section 1001 of Title 18 with ramifications that are intended upon that. The district court offers only a single criticism of one of the four declarations. And it states that the opinion only names the Vincent Bono Declaration of June 30th, 2008. And the district court gives one reason for finding that one declaration not credible. It says that Vincent Bono refused for 14 years to sign a document assigning the 161 application to Tony and Joe O'Keefe. That is the single criticism that the court takes with any of the declaration evidence that was submitted in this case. And there are four declarations. The district court construes this single fact as making all of Vincent Bono's declaration is not credible. But this is on page 14 of the opinion, Your Honor. But Vincent's reasons for refusing in the footnote, footnote 24. But Vincent's reasons for refusing to sign this document, such a document, for this period of time are highly documented throughout all four declarations. Furthermore, Vincent Bono's declaration explains the circumstances of the July 1993 Penrill Agreement. He goes into great detail. And he also points out in his sworn declaration why that July 1993 Penrill Agreement is not effective. And it's got conflicting provisions. In the second whereas clause on the first page of the Penrill Agreement, it talks about, in point two of that second whereas clause, it talks about how Penrill's predecessor, Datability, did not get proper title to certain technologies that are associated with the Constellation Switch. And because it didn't get proper title, it had to pay royalties. And then it goes on in section 4.3c. It talks about the claim that Tony and Joachim, the claim of ownership that Tony and Joachim had to that technology. So the Penrill Agreement, although it talks about being an assignment, and it references the 161 application, it also talks about the ownership claim held by Tony and Joachim. It's not specific about exactly what that ownership claim is. But they still paid, according to, and this is all in the evidence, they paid Tony and claim that is referenced within that Penrill Agreement. Furthermore, Penrill did nothing with that assignment document. Penrill basically went off and it no longer exists as a company to my knowledge or to anybody's knowledge. So that is my presentation. If you have any other questions. Okay, thank you. Thank you both. The case is taken under submission. Thank you. That concludes our argued cases for this morning.